Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

K. CODY ALLISON
PARKWAY TOWERS
404 JAMES ROBERTSON PKWY
STE # 1623
NASHVILLE TN 37219

EXHIBIT

B

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-4110

December 12, 2018

K. Cody Allison
Cody Allison & Associates, Pllc
PARKWAY TOWERS
404 JAMES ROBERTSON PKWY
STE # 1623
NASHVILLE, TN 37219

RE: Long Term Disability (LTD) Benefits
Walmart, Inc.
Claim #: 7901760
Claimant: Sherry Woolverton-Jones

Dear K. Cody Allison:

We reviewed your appeal request for Long Term Disability ("LTD") benefits for Sherry Woolverton-Jones and maintained the decision to deny benefits.

**Initial Claim Decision**

A claim was submitted for Ms. Woolverton-Jones' absence from work as of April 19, 2016, as a result of right sided flank pain. Her LTD benefits were due to begin on October 25, 2016 after the Policy's elimination period was completed. However, her claim was denied as the evaluation concluded she was not disabled throughout and beyond the Policy's elimination period.

During the initial claim evaluation to determine Ms. Woolverton-Jones' eligibility for benefits, her claim was reviewed by a consulting physician who is board certified in Internal Medicine. Based on a review of the records, the physician indicated Ms. Woolverton-Jones ceased working in April 2016 with complaints of right lower thoracic back pain and was found to have 2 right sided non-displaced rib fractures, without history of trauma. The physician noted that although pain was reported at the time benefits were set to begin, this is questionable and would not necessarily cause impairment for her occupation as an Optician. He indicated her bone density test showed borderline criteria for osteoporosis in hip area only and not in spine readings. The physician concluded the available medical records do not provide evidence to support impairment at the time her benefits were set to begin on October 25, 2016. The reviewer did not attempt to make contact with Ms. Woolverton-Jones' providers given the amount of time that had passed.

The medical documentation received and basis for the decision were outlined in a letter dated April 2, 2018. You were provided an opportunity to request an appeal review of the denial, stating the

reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information:

> *hospital records, diagnostic testing, procedure reports, office notes, treatment plan, restrictions, prescription histories, therapy notes, abnormal exam findings, and any other clinical documentation from Dr. Smith and any other treating providers as well as any additional comments, documents, records, or other information, including any Social Security decision you may have received that you feel will support your claim as of October 25, 2016.*

**Appeal**

On May 17, 2018, we received the following:

- Activities Questionnaire dated April 26, 2018
- Claimant Information Form dated April 26, 2018
- Physicians and Medical Facilities
- Claimant Supplementary Statement dated April 26, 2018
- Authorization to Obtain and Release Psychotherapy Notes dated April 26, 2018
- Authorization to Obtain and Release Information (Excluding Psychotherapy notes) dated April 26, 2018
- Cody Allison & Associates Authorization form dated March 5, 2018
- Authorization for Release of Information Relating to ERISA Plans and Appointment of Representative dated March 5, 2018
- Authorization to Communicate with Cody Allison & Associates, PLLC dated March 5, 2018

Duplicate copies of this information was received on May 22, 2018.

On June 26, 2018, we received your request for claim file information. A complete copy of the claim file, system screen shots and Policy was mailed to your office that day.

In your letter of appeal dated September 28, 2018, you indicated Ms. Woolverton-Jones was forced to stop working due to narcolepsy and cataplexy, cardiac arrhythmia, hypercoagulable syndrome, osteoporosis, carpal tunnel syndrome, neuropathy, chronic migraines, tremors and right shoulder, hip and neck pain.

In support of your claim, you submitted the following information on October 4, 2018:

- Records dated April 22, 2016 through July 24, 2017 – Baptist Medical Group
- General Physical Residual Functional Capacity Questionnaire dated August 20, 2018 – Robert W. Schriner, M.D.
- Records dated August 8, 2016 and February 9, 2017 – Lee S. Stein, M.D.
- Records dated March 6, 2017 – Hugh Francis III
- Records dated February 13, 2017 through April 5, 2017 – Sports Orthopedics & Spine
- Records dated March 13, 2017 and March 30, 2017 - Cardiovascular Physicians of Memphis
- Form Part A Medical Facts dated June 6, 2016
- Attending Physician's Statement dated August 4, 2016 – Kirby Smith, M.D.
- Records dated August 8, 2016 and February 8, 2017 – Margaret West Comprehensive Breast

Center

- Records dated July 11, 2016 through November 30, 2016 - Center for Adult Healthcare
- Medications Taken Before Insurance Termed
- Job description

**Appeal Evaluation**

Ms. Woolverton-Jones' ceased working effective April 19, 2016 due to right lower thoracic pain and was found to have 2 non-displaced rib fractures, without history of trauma.

Our role in reviewing the file is to determine whether Ms. Woolverton-Jones' medical condition and the medical documentation contained in her file supports that she was unable to perform the material and substantial duties of her own occupation throughout and beyond the elimination period beginning April 19, 2016.

Ms. Woolverton-Jones' claimed date of disability was April 19, 2016. However, her claim for Long Term Disability benefits was not filed until February of 2018, well beyond the Notice and Proof deadline. Given the delay in filing for benefits, the ability to conduct a timely examination would not have been possible.

During the review of your appeal, the claim was reviewed by Paul A. Smucker, M.D., an independent physician who is board certified in Physical Medicine and Rehabilitation, Sub Specialty Certificate in Pain Medicine, Added Expertise in Spine. Dr Smucker acknowledged Ms. Woolverton-Jones' diagnoses including fractured ribs, small cervical herniated disc at C6-7, costochondritis and long term use of medications. Her multiple co-morbid conditions were also acknowledged. Dr. Smucker noted there was no nerve or cord compression associated with the small disc herniation. He also noted the absence of stenosis or instability. Dr. Smucker provided the following analysis with regard to whether the information provided evidence of impairment resulting from the aforementioned diagnoses:

> *Based on review of the provided medical records, in my opinion, there are no musculoskeletal diagnoses that are causing any type of functional impairment. The claimant had multiple complaints of pain including hip pain, neck pain, and pelvic pain. MRI of the cervical spine revealed tiny C6-7 herniated disc without sign of cord or nerve impingement, no stenosis, no instability. She remained neurologically intact on exams. Whole body bone scan revealed two fractured ribs at the right 11th and 12th ribs but no other findings. X-rays of the hip were negative.*
>
> *Based on review of the provided medical records, in regards to musculoskeletal issues, there are no objective findings on exam or diagnostics that would indicate the need for any restrictions or limitations from 04/19/2016 to present.*
>
> *No side effects were noted from the current medication regimen. No restrictions based on current medication regimen are supported.*
>
> *The claimant could work full duty, no restrictions on a full time sustained capacity from 4/19/16 to present.*
>
> *The claimant states she has severe numbness and tingling and pain in the upper extremity. That does not correlate with findings on cervical MRI scan.*

A review was also conducted by Allen J. Blaivas, D.O., an independent physician who is board certified in Internal Medicine, Sub Specialty Certificate in Sleep Medicine, Sub Specialty Certificate in Pulmonary Disease, Sub Specialty Certificate in Critical Care Medicine. Dr. Blaivas noted Ms. Woolverton-Jones' complaints of paresthesias, headache, nipple discharge/breast cysts, narcolepsy with cataplexy, osteoporosis and pain at multiple sites. Based on documented evidence contained in the records, Dr. Blaivas reported the records supported diagnoses of breast discharge/cysts, rib fractures, and narcolepsy with cataplexy, although the actual sleep studies were not submitted for review. Dr. Blaivas also noted mention of sleep apnea.

Dr. Blaivas provided the following analysis with regard to his assessment of impairment based on the clinical findings:

> *From an IM/Pulmonary/Sleep perspective there is no clear evidence of ongoing functional impairment from 4/19/16 and onward.*
>
> *The claimant's narcolepsy appears to cause some degree of tiredness, but there is no evidence that the claimant is sleepy to the extent that she is unable to function in the workplace with minimal accommodation for her sleepiness. The initial polysomnography/multiple sleep latency test (PSG/MSLT) is not available for my review. She has not had a MSLT or Maintenance of Wakefulness Test (MWT) while on stimulant therapy to demonstrate continued sleepiness despite treatment. Her cataplexy appears to be no worse than mild, based on Dr. Schriner's notes and RFC statement. The claimant stopped the medication for cataplexy on her own, reportedly due to cost. I defer an assessment of the claimant's pain symptoms to my co-reviewer, physical medicine specialist. Osteoporosis is not an impairing diagnosis.*

On November 12, 2018, we received duplicate copies of records dated July 11, 2016 through November 30, 2016 from Dr. David Guthrie at Center for Adult Healthcare. We also received records dated April 29, 2016, May 7-8, 2016, May 16-23, 2016, June 27, 2016, July 27, 2016 and December 29, 2016 from Methodist LeBonheur Healthcare and dated May 10, 2016 from Dr. Lawrence Wruble.

The additional records were submitted to Dr. Smucker and Dr. Blaivas for review. The reviewers each reported that the additional information did not provide evidence of sustained impairment that would preclude work capacity beginning April 2016.

The records do not provide evidence that Ms. Woolverton-Jones' sleep disorder resulted in impairment that prevented her from working effective April 19, 2016. The information shows Ms. Woolverton-Jones' was previously working in her Own Occupation with the condition and there is no evidence of a change in that condition at the time she ceased working.

Dr. Blaivas indicated that typical accommodations for narcolepsy would include nap breaks during break time and lunch, however the records indicate Ms. Woolverton-Jones was not requiring scheduled naps during the day when she ceased working. The record dated August 8, 2016 by Dr. Robert Schriner indicate Ms. Woolverton-Jones was seen for the diagnosis of narcolepsy with cataplexy and it was noted she was "clinically doing adequately with current treatment". Per the record, Ms. Woolverton-Jones reported "She probably obtains 9+ hours of sleep time at night. Mild daytime sleepiness is noted. She feels fatigued but does not take any scheduled naps. She is working as an Optician at a Sam's Club (but presently on disability leave for treatment of back / rib issues –

scheduled to have a nerve block later this week)."

While the Activities Questionnaire completed by Ms. Woolverton-Jones on April 26, 2018, more than two years after she ceased working, indicated narcolepsy was preventing her from engaging in gainful employment, the records do not show that narcolepsy induced her absence from work in 2016. Ms. Woolverton-Jones made no reference on the form, to any other condition preventing her from engaging in gainful employment. The records show she was being treated for narcolepsy at least since May of 2015.

The record dated June 6, 2016 by John H. Powell, NP states that Ms. Woolverton-Jones' reported acute onset of flank pain that prevented her from working since April.

The Attending Physician Statement completed by Kirby Smith, M.D. on August 4, 2016, noted Ms. Woolverton-Jones' complaints included right shoulder, side and hip pain as well as nipple discharge. Her prescribed medication at that time included Coumadin, Adderall XR 60mg daily, Xyrem 6g daily and Fosamax 70mg once a week.

While Ms. Woolverton-Jones may have experienced some symptoms associated with the rib fractures, the records do not substantiate sustained impairment that would preclude work capacity.

Ms. Woolverton-Jones has been treated for a breast condition, however there was no evidence of related functional impairment. Additionally, Ms. Woolverton-Jones may have received treatment for chronic migraines, arrhythmia, carpal tunnel syndrome and other conditions since she ceased working more than 2 1/12 years ago, however the records do not show that these conditions were resulting in impairment to the degree that would preclude work capacity throughout and beyond the elimination period.

Based on the totality of information received and the clinical assessments conducted, evidence of Ms. Woolverton-Jones' inability to perform the duties of her occupation throughout and beyond the elimination period from April 19, 2016 to October 24, 2016, has not been provided.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Ms. Woolverton-Jones' entire claim. In summary, we acknowledge she may have experienced some symptoms associated with her conditions. However, the information does not contain physical or mental status exam findings, evidence of observed sustained impairment, diagnostic test results or other forms of medical documentation supporting her conditions resulted in restrictions or limitations rendering her unable to perform the duties of her occupation throughout and beyond the Policy's elimination period.

Having carefully considered all of the information submitted in support of Ms. Woolverton-Jones' claim, our position remains that proof of her disability in accordance with the Policy provisions has not been provided. Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**" means:*

*1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:*

- *i.* *that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
- *ii.* *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc.*

***Elimination Period:***
*Applicable to Class 1A, 1B, 2A, 2B:*
*The greater of:*

- *a.* *the end of the Covered Person's Short Term Disability Benefits,*
- *b.* *26 weeks*

*"**Elimination Period**" means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.*

***Notice and Proof of Claim***

*1. **Notice***
- *a.* *Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.*
- *b.* *When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.*

*2. **Proof***
- *a.* *Satisfactory Proof of loss must be given to Liberty no later than 30 days after the end of the Elimination Period.*
- *b.* *Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*
- *c.* *Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for*

*such Proof.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information you wished to be considered as part of the appeal. Liberty has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Liberty and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Walmart Stores, Inc. Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*
2. *more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is November 17, 2019.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the Walmart Stores, Inc. Group Disability Income Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Liberty Life to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Heidi Jacques
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16403
Secure Fax No.: (603) 334-4110